IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:12-cv-141-LED[1] |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| ORACLE CORPORATION, et al. | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

---

[1] Cases consolidated for pre-trial proceedings (except for venue) are:  Case No. 6:12-cv-142, Case No. 6:12-cv-143, Case No. 6:12-cv-144, Case No. 6:12-cv-145, Case No. 6:12-cv-146, Case No. 6:12-cv-147, Case No. 6:12-cv-148, Case No. 6:12-cv-149, Case No. 6:12-cv-150, Case No. 6:12-cv-151, Case No. 6:12-cv-152, Case No. 6:12-cv-153.  However, the original defendants in the lead case number (6:12-cv-141-LED), namely Best Buy Co., Inc., BestBuy.com LLC, Neiman Marcus, Inc., Office Max, Inc., Oracle Corporation, Oracle OTC Subsidiary LLC, The Neiman Marcus Group, Inc., Walgreen Co., Walgreens.com, Inc., and bergdorfgoodman.com, LLC, were all dismissed on April 23, 2014 and thus take no part in this motion.

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ........................... 3

III.    BACKGROUND .................................................................. 3

        A.      The Asserted Claims ................................................ 4

        B.      Soverain's Litigation History ...................................... 4

IV.     SOVERAIN IS COLLATERALLY ESTOPPED
        FROM CONTESTING THE FEDERAL CIRCUIT'S FINAL
        DECISION OF INVALIDITY BASED ON OBVIOUSNESS. ....................... 6

        A.      This Court Should Defer Ruling on Collateral
                Estoppel (And Defer Litigation of the Affected
                Claims) Until After the Federal Circuit Decides the Issue. ................... 6

        B.      Collateral Estoppel Bars Relitigating The
                Validity Of Patent Claims Already Held Invalid. ................................. 7

        C.      Collateral Estoppel Applies Not Only To The Claims
                Invalidated By The Federal Circuit But Also To Those
                That Do Not Materially Alter The Question Of Invalidity. ................... 8

        D.      Soverain Had A Full And Fair Opportunity To Litigate The Validity Of The
                "Shopping Cart" And "Hypertext Statement" Subject Matter In *Newegg*. .......... 10

                1.      Soverain Actually Litigated The Issue Of Validity Through Trial. .......... 10

                2.      The Issue of Validity Was Fully and Fairly Before the Federal Circuit. ... 12

                3.      The Federal Circuit And Supreme Court Have Already
                        Rejected Soverain's Efforts To Set Aside The *Newegg* Judgment. .......... 13

V.      SUMMARY JUDGMENT OF OBVIOUSNESS ON THE "RISE OR
        FALL" CLAIMS IS PROPER EVEN WITHOUT COLLATERAL ESTOPPEL .......... 14

        A.      Already Invalid Claims .................................................. 15

        B.      The Additional "Rise or Fall" Claims ................................... 15

VI.     SOVERAIN'S ELECTED CLAIMS ARE OBVIOUS AS A MATTER OF LAW ......... 17

        A.      Claims 49 and 109: The Payment Message Activation Claims ........... 19

        B.      Claims 74 and 134: The Payment Confirmation Claims ................ 23

      C.      Claims 84 and 144: The Name and Password Request Claims ........................... 26

VII.   CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Aspex Eyewear, Inc. v. Zenni Optical, Inc.,*
713 F.3d 1377 (Fed. Cir. 2013)............................................................................. 8, 9

*Blonder-Tongue Labs., Inc. v. Univ, of Ill. Found.,*
402 U.S. 313 (1971)............................................................................................. 8, 10

*KSR Int'l Co v. Teleflex Inc.,*
550 U.S. 398 (2007) ................................................................................................. 18

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,*
719 F.3d 1367 (Fed. Cir. 2013).......................................................................... 7, 10

*Mendenhall v. Barber-Greene Co.,*
26 F.3d 1573 (Fed. Cir. 1994)................................................................................... 7

*Mendenhall v. Cedarapids, Inc.,*
5 F.3d 1557 (Fed. Cir. 1993), *cert. denied*, 511 U.S. 1031 (1994).......................... 6

*Mississippi Chem. Corp. v. Swift Agr. Chems. Corp.,*
717 F.2d 1374 (Fed. Cir. 1983)................................................................................. 8

*Montana v. United States,*
440 U.S. 147, 164 n.11, 99 S. Ct. 970 (1979)........................................................ 10

*Muniauction, Inc. v. Thomson Corp.,*
532 F.3d 1318 (Fed. Cir. 2008)............................................................................... 19

*Ohio Willow Wood Co. v. Alps South, LLC,*
735 F.3d 1333 (Fed. Cir. 2013)..................................................................... 7, 8, 9, 15

*Pfaff v. Wells Elecs.,*
525 U.S. 55 (1998) .................................................................................................. 17

*Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,*
170 F.3d 1373 (Fed. Cir. 1999)............................................................................. 7, 8

*Soverain Software LLC v. Newegg Inc.,*
705 F.3d 1333 (Fed. Cir. 2013), *modified on reh'g,*
728 F.3d 1332 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 910 (2014) ............... *passim*

*Soverain Software LLC v. Newegg, Inc.,*
836 F. Supp. 2d 462 (E.D. Tex. 2010) ...................................................................... 4

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC. & Avon Prods., Inc.,*
  *appeal docketed,*
  Nos. 2012-1649, -1650 (Fed. Cir. Sept. 10, 2012)................................................................. 5, 6

*Stevenson v. Sears Roebuck & Co.,*
  713 F.2d 705 (Fed. Cir. 1983)............................................................................................ 8

*Western Union Co. v. MoneyGram Payment Sys., Inc.,*
  626 F.3d 1361 (Fed. Cir. 2010).......................................................................................... 19

## Statutes

35 U.S.C. § 103 ..................................................................................................................... 17, 18

## Rules

Patent Rule 3-1..................................................................................................................... 2

## Other Authorities

Restatement (Second) of Judgments § 28 cmt.......................................................................... 8

**TABLE OF EXHIBITS**

| | |
|---|---|
| Exhibit 1 | U.S. Patent No. 5,715,314 |
| Exhibit 2 | U.S. Patent No. 5,909,492 |
| Exhibit 3 | Plaintiff's Disclosure of Asserted Claims and Infringement Contentions Pursuant to Patent Rule 3-1 (Case No. 6:12-cv-143), dated September 21, 2012 |
| Exhibit 4 | List of Claims at Issue in this Motion |
| Exhibit 5 | Brief of Appellant Newegg Inc., No. 2011-1009 (Dkt. No. 21, Dec. 7, 2010) |
| Exhibit 6 | Brief of Plaintiff-Appellee Soverain Software, LLC, No. 2011-1009 (Dkt. No. 53, March 28, 2011) |
| Exhibit 7 | Soverain's Combined Petition for Rehearing and Rehearing *En Banc*, No. 2011-1009 (Dkt. No. 72, Mar. 1, 2013) |
| Exhibit 8 | Soverain's Petition for Writ of Certiorari in *Soverain v Newegg* |
| Exhibit 9 | U.S. Patent No. 5,724,424 (Gifford) |
| Exhibit 10 | Trial Transcript, *Soverain v. Newegg*, April 29, 2010, Morning Session (No. 6:07-cv-511-LED, Dkt. 394) |
| Exhibit 11 | Trial Transcript, *Soverain v. Newegg*, April 29, 2010, Afternoon Session (No. 6:07-cv-511-LED, Dkt. 397) |
| Exhibit 12 | Trial Transcript, *Soverain v. Newegg*, April 28, 2010, Afternoon Session (No. 6:07-cv-511-LED, Dkt. 396) |
| Exhibit 13 | Declaration of Alexander B. Trevor Regarding Invalidity of U.S. Patent No. 5,715,314 |
| Exhibit 14 | Charles Bowen & David Peyton, *How to Get the Most out of CompuServe* (4th ed. 1989) (*Soverain v. Newegg*, Trial Exhibit 2) |
| Exhibit 15 | Jill H. Ellsworth, Ph.D. & Matthew V. Ellsworth, *Using CompuServe* (1994) (*Soverain v. Newegg*, Trial Exhibit 4) |
| Exhibit 16 | Video titled "Exhibit 16 - CompuServe Mall Video (Newegg Trial Ex 156).avi" (*Soverain v. Newegg*, Trial Ex. 156), submitted on compact disk to the Court |
| Exhibit 17 | CV of Alexander B. Trevor |
| Exhibit 18 | Receipt (referred to in Exhibit 13) |
| Exhibit 19 | Claim Chart Comparing Certain Claims of U.S. Patent No. 5,715,314 to CompuServe Electronic Mall (referred to in Exhibit 13) |

## I.   __INTRODUCTION__

Soverain's asserted "shopping cart" and "hypertext statement" claims are invalid.  The

Federal Circuit reached that conclusion more than a year ago, when it determined that several of

the very same claims that Soverain continues to assert in this case from both U.S. Patent Nos.

5,715,314 (the "'314 patent") and 5,909,492 (the "'492 patent") were obvious as a matter of law,

and accordingly invalidated them.  This Court is bound to reach that same conclusion as to those

already invalidated claims, and should reach the same conclusion for Soverain's remaining

"shopping cart" and "hypertext statement" claims as well, most of which Soverain concedes are

not patentably distinct from the expressly invalidated claims.[2]

Defendants file this motion for summary judgment of invalidity following the Federal

Circuit's decision in *Soverain Software LLC v. Newegg Inc.*, (*Newegg I*), 705 F.3d 1333 (Fed.

Cir. 2013), *modified on reh'g*, 728 F.3d 1332 (Fed. Cir. 2013) (*Newegg II*), *cert. denied*, 134 S.

Ct. 910 (2014).  In *Newegg*, the Federal Circuit determined that the "shopping cart" and

"hypertext statement" claims asserted there were obvious as a matter of law over the

CompuServe Mall.  In the wake of that decision, the parties and this Court agreed to stay this

case while Soverain sought review of the Federal Circuit's invalidity determination.  The Federal

Circuit and the Supreme Court then both rejected Soverain's efforts to set aside the *Newegg*

judgment, making it final.

But Soverain continues to resist that judgment here.  After expiration of the stay, the

parties agreed to a schedule for resuming this case that included this motion for summary

judgment.  As part of that schedule, Soverain was to identify the claims that it would no longer

---

[2] This motion addresses the "shopping cart" and "hypertext statement" claims, which are in
fact ***all*** of the claims asserted against most of the defendants.  However, Soverain does assert a
handful of other types of claims against a few defendants in Case No 6:12-cv-143:  '314 claims
1, 2, 9, 12, 13, 24, 25 and '492 claim 5.  Those eight claims do not recite "shopping carts" or
"hypertext statements" and are not affected by this motion.

assert in view of the Federal Circuit's judgment of invalidity in *Newegg*.  Instead, Soverain

brazenly asserted that *Newegg* should not be accorded any preclusive effect whatsoever, even as

to the claims expressly invalidated by the Federal Circuit.  *See* Soverain's Notice of Asserted

Claims at 1-2 (Dkt. 156) ("Soverain will continue to assert these claims unless and until a final

ruling is entered against Soverain on the collateral estoppel issue.").[3]  Soverain then proceeded to

identify six "shopping cart" and "hypertext statement" claims that it contends survive *Newegg*

regardless of any collateral estoppel issues.  Soverain's refusal to accept the result of *Newegg*,

however, cannot withstand summary judgment.  All of the "shopping cart" and "hypertext

statement" claims asserted here, even the six that Soverain asserts survive *Newegg*, are invalid as

a matter of law in view of *Newegg* and the prior art relied on there.

   As a threshold matter, Soverain cannot even contest the invalidity of nearly all of the

claims it asserts here.  The Federal Circuit's *Newegg* decision collaterally estops Soverain from

relitigating the invalidity of the same subject matter already held invalid there.  The *Newegg*

judgment, holding that all of the "shopping cart" and "hypertext statement" claims asserted there

are invalid as obvious, followed a full trial on that issue.  Consequently, Soverain can only

escape estoppel by demonstrating that it did not have a "full and fair opportunity" to litigate the

validity of its claims in *Newegg*.  Soverain cannot meet this burden:  it had more than a full and

fair ***opportunity*** to litigate the issue; it ***actually*** litigated the issue of validity through trial.

Indeed, Soverain put on a complete rebuttal case to Newegg's obviousness defense, featuring

extensive testimony from its expert.  But the Federal Circuit found that none of that rebuttal

---

[3] Soverain's Notice of Asserted Claims also identified several additional claims that had not
been included in Soverain's Patent Rule 3-1 Infringement Contentions against any Defendant,
and indicated that Soverain "may assert" these claims in this case.  (Dkt. No. 156, at 2-4).
Defendants object to these additional claim assertions as improper under Patent Rule 3-1(a),
which does not give Soverain the right to assert these claims at this belated time absent leave of
Court upon a showing of good cause.

evidence offset Newegg's clear and convincing proof of obviousness.

Moreover, the six additional "shopping cart" claims that Soverain contends are unaffected by the *Newegg* decision are not, in fact, patentably distinct from the claims at issue in *Newegg* and should likewise be invalidated.  Those six claims boil down to three pairs of "shopping cart" claims, all from the '314 patent, that add only trivial limitations to the subject matter held invalid by the Federal Circuit:

> **Claims 49 and 109:**  activation of the payment message already required in invalidated claim 34;

> **Claims 74 and 134:**  sending "a payment confirmation document" to the buyer computer; and

> **Claims 84 and 144:**  asking the buyer computer for "an account name and password."

Each of these limitations is likewise disclosed or rendered obvious by the same CompuServe Mall system that was the subject of the Federal Circuit's decision in *Newegg*.  As a result, Soverain cannot offer any evidence to raise a genuine issue of material fact that these claims are not invalid, and the Court should grant summary judgment of invalidity.

## II.   <u>STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT</u>

The issues to be decided by the Court are:

(1) whether the Federal Circuit's final judgment in *Newegg*, holding all of the "shopping cart" and "hypertext statement" claims asserted there invalid as obvious as a matter of law, collaterally estops Soverain from contesting the invalidity of claims directed to the same subject matter in this case; and

(2) whether Soverain's alleged six remaining claims are also invalid as obvious in view of *Newegg* and the CompuServe Mall system.

## III.   <u>BACKGROUND</u>

Soverain filed thirteen lawsuits in October of 2011 that collectively alleged that more than 20 businesses, primarily traditional brick-and-mortar retailers and e-commerce software providers, infringed claims from two patents, the '314 patent (Ex. 1) and the '492 patent (Ex. 2).

On October 9, 2012, the Court consolidated those separately filed cases for pre-trial proceedings. (Dkt. 62).

### A.     The Asserted Claims

The '314 and '492 patents are related to network-based sales systems.  Soverain is asserting 33 "shopping cart" and "hypertext statement" claims from the '314 and '492 patents:

> **Shopping cart claims:**  (a) '314 claims 34, 35, 36, 37, 38, 39, 49, 50, 51, 60, 61, 65, 74, 84, 109, 110, 111, 120, 121, 134, and 144 and (b) '492 claims 18 and 36.

> **Hypertext statement claims:**  '492 claims 16, 74, 75, 92, 95, 96, 97, 101, 102, and 103.

Ex. 3 (Infringement Contentions); *see also* Ex. 4 (table listing asserted claims).  The "shopping cart" claims are generally directed to a buyer designating products for purchase and initiating payment for those products through a computer network.  The "hypertext statement" claims are generally directed to providing transaction statements to a client computer from a server computer.

### B.     Soverain's Litigation History

Soverain has asserted both the '314 and '492 patents in several rounds of prior litigation, including two jury trials.  In *Newegg*, the first case to proceed to trial, this Court granted judgment as a matter of law ("JMOL") to Soverain on obviousness at the close of evidence.  *See Soverain Software LLC v. Newegg, Inc.*, 836 F. Supp. 2d 462, 468, 478-79 (E.D. Tex. 2010).  On appeal, the Federal Circuit held as a matter of law that all of Soverain's asserted claims, including claims 34 and 51 of the '314 patent and claims 17, 41 and 61 of the '492 patent, were invalid as obvious, noting that both sides had presented witnesses and evidence on the question of obviousness at trial.  *Newegg I*, 705 F.3d at 1337-1344.  The Federal Circuit's opinion cited extensively from expert testimony offered by Dr. Michael Shamos, Soverain's expert, and Edward Tittel, Newegg's expert.  *Id.*

Page 4

Soverain attempted to set aside the Federal Circuit's decision in *Newegg I* three times. First, in a petition for rehearing, Soverain alleged existence of disputed issues of fact and argued for a new trial on obviousness.  No. 2011-1009 (Dkt. No. 72, Mar. 1, 2013) (attached as Ex. 7). The Federal Circuit panel that decided the appeal granted a "rehearing to assure that the claims at issue in this [*Newegg*] litigation were adequately and fairly assessed at trial and on appeal." *Newegg II*, 728 F.3d at 1333.  Following supplemental briefing from both parties, in which Soverain again argued for a new trial, the Federal Circuit issued a decision clarifying that claim 34 was "representative of the 'shopping cart' claims" and that claim 35, which depends from claim 34, was also invalid for obviousness.  *Id.* at 1336; No. 2011-1009 (Dkt. No. 99, Jul. 3, 2013).   The Federal Circuit then denied Soverain's petition for a rehearing *en banc* (*see* Order at 2, No. 2011-1009 (Dkt. No. 102, Sept. 4, 2013)), and the Court's mandate issued the following week (*see* Mandate, No. 2011-1009 (Dkt. No. 103, Sept. 11, 2013)).  Soverain then submitted a petition for *certiorari* to the Supreme Court (attached as Ex. 8), which was also denied.  *See* 134 S. Ct. 910 (2014).

Soverain's second case to proceed to trial is now on appeal before the Federal Circuit. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC. & Avon Prods., Inc.* (*Victoria's Secret*), *appeal docketed*, Nos. 2012-1649, -1650 (Fed. Cir. Sept. 10, 2012).  There, Soverain has argued that *Newegg* has no collateral estoppel effect on any "shopping cart" and "hypertext statement" claims, including those that were finally ruled invalid in *Newegg.  See Br. of Pl.-Appellee Soverain Software LLC*, Apr. 14, 2014, *Victoria's Secret* (Dkt. 78).  The Federal Circuit will, therefore, soon address the very same collateral estoppel issues briefed in this motion, and that decision will be binding on the Court.

In this case, Soverain has conceded that if collateral estoppel applies, the invalidity

determination will apply not only to the claims litigated in *Newegg*, but also to all but six of the

remaining asserted claims.  *See* Soverain's Notice of Asserted Claims at 1-2 (Dkt. 156).

## IV.   SOVERAIN IS COLLATERALLY ESTOPPED FROM CONTESTING THE FEDERAL CIRCUIT'S FINAL DECISION OF INVALIDITY BASED ON OBVIOUSNESS.

### A.   This Court Should Defer Ruling on Collateral Estoppel (And Defer Litigation of the Affected Claims) Until After the Federal Circuit Decides the Issue.

As noted immediately above, Soverain is resisting the estoppel resulting from *Newegg* in

the *Victoria's Secret* appeal now pending before the Federal Circuit.  In that appeal, as in this

case, Soverain continues to assert claims that the Federal Circuit invalidated in *Newegg*.  The

appellants-defendants there have also asserted collateral estoppel as a defense.  The briefing in

that appeal will be complete on May 29, 2014.  Defendants respectfully suggest that this Court

defer its decision on this motion until the Federal Circuit resolves the *Victoria's Secret* appeal for

two reasons.

First, the Federal Circuit's collateral estoppel decision in *Victoria's Secret* will

necessarily be binding on this Court in this case as a matter of *stare decisis*.[4]  This Court need

not risk an inconsistent decision with that of the Federal Circuit in *Victoria's Secret* or waste

judicial resources considering the same issue at the same time.

Second, if Soverain is collaterally estopped in this case, then this summary judgment

motion becomes much more narrow and focused for this Court to decide.   If collateral estoppel

applies, 27 of the asserted claims will "fall" by Soverain's own admission (three that were

---

[4] "*Stare decisis* in essence 'makes each judgment a statement of the law, or precedent, binding in future cases before the same court or another court owing obedience to its decision.'" *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993) (internal citations omitted), *cert. denied*, 511 U.S. 1031 (1994).

invalidated by *Newegg* as well as 24 others), leaving this Court to consider obviousness of just six related claims from just one of the two patents in suit for this motion.  (*See* Section VI). Nevertheless, if this Court wishes to consider the collateral estoppel question before the Federal Circuit does, defendants have briefed the issue below.

> ### B.   Collateral Estoppel Bars Relitigating The
> ### Validity Of Patent Claims Already Held Invalid.

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (*citing Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999)).  As applied to a prior determination of invalidity, "once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel." *Pharmacia*, 170 F.3d at 1379 (*quoting Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994)).

Collateral estoppel, also known as issue preclusion, applies when:

(1) the identical issue was previously adjudicated;
(2) the issue was actually litigated;
(3) the determination of the issue was necessary to the resulting judgment; and
(4) the party defending against preclusion had a full and fair opportunity to litigate the issue.

*See, e.g., Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.,* 719 F.3d 1367, 1371 (Fed. Cir. 2013).

"If an alleged infringer raises the defense of collateral estoppel," following a determination of invalidity, "the burden is on the patentee 'to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'" *Mississippi Chem. Corp. v. Swift Agr. Chems. Corp.*, 717 F.2d 1374, 1376 (Fed. Cir.

1983) (*quoting Blonder-Tongue Labs., Inc. v. Univ, of Ill. Found.*, 402 U.S. 313, 333 (1971)); *see also Pharmacia*, 170 F.3d at 1379-80.  The "inquiry into whether the plaintiff was afforded a full opportunity to litigate is quite narrow," and does not consider "whether the prior finding of invalidity was correct." *Pharmacia*, 170 F.3d at 1380 (*quoting Stevenson v. Sears Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983)); *Stevenson*, 170 F.3d at 712 ("We believe the rationale of *Blonder-Tongue* extends to all prior determinations of invalidity; its application is not dependent on how the judgment of invalidity was reached.").  Decisions to avoid the application of collateral estoppel through this exception must be rare and "should not be encouraged." Restatement (Second) of Judgments § 28 cmt. g at 282 (1982).

The application of collateral estoppel is a question of law that may be resolved on summary judgment.  *See Ohio Willow Wood*, 735 F.3d at 1341-42.  While regional circuit law generally governs collateral estoppel, Federal Circuit law governs the application of collateral estoppel to substantive issues of patent law.  *Id* at 1342 (*citing Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013)).

### C.    Collateral Estoppel Applies Not Only To The Claims Invalidated By The Federal Circuit But Also To Those That Do Not Materially Alter The Question Of Invalidity.

In the *Newegg* decisions, the Federal Circuit expressly invalidated three of the very same claims that Soverain continues to assert here:  claims 34, 35 and 51 of the '314 patent.  *Newegg*, 705 F.3d at 1341; *Newegg II*, 728 F.3d at 1336.  In addition to those three invalid claims,[5] collateral estoppel *also* applies to 24 other claims that Soverain continues to assert in this case,

---

[5] In *Newegg*, the Federal Circuit also expressly invalidated "shopping cart" claim 17 of the '492 patent, as well as the "hypertext statement" claims 41 and 61 of the '492 patent.  Because claim 61 of the '492 patent depends on claim 60, which in turn depends on claim 15, the Federal Circuit's *Newegg* opinion also invalidated the latter two claims.  In addition, the Federal Circuit in *Newegg* also expressly invalidated claims 69 and 79 of Soverain's Patent No. 7,272,638, which is not in the present suit, but which also relates to electronic commerce.

because "the differences between [those] claims and adjudicated patent claims do not materially alter the question of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342.  "It is the identity of the issues litigated and decided, and which were essential to the prior judgment, that determines whether the estoppel should be applied. . . . There is no reason to employ a different approach in a patent context by looking to the claims litigated instead of to the issues that were decided." *Aspex Eyewear, Inc. v. Zenni Optical, Inc.*, 713 F.3d 1377, 1381 (Fed. Cir. 2013).

In fact, because many of the claims that Soverain continues to assert in this case are not materially different than those invalidated by the Federal Circuit, Soverain has conceded that, should collateral estoppel apply, it will no longer be able to assert those claims in this case. Soverain's Notice of Asserted Claims at 1-2 (Dkt. 156) ("Assertion of many claims disclosed in Soverain's October 3, 2012 P.R. 3-1 Infringement Contentions rises or falls based on the collateral estoppel effects of the Federal Circuit's January 22, 2013 decision in *Soverain Software LLC v. Newegg*, 2011-1009.").  Specifically, Soverain's concession applies to asserted claims 36, 37, 38, 39, 50, 60, 61, 65, 110, 111, 120 and 121 of the '314 patent and claims 18 and 36 of the '492 patent, each of which is directed to substantially the same "shopping cart" subject matter invalidated by the Federal Circuit in claims 34, 35 and 51 of the '314 patent and claim 17 of the '492 patent.  Likewise, Soverain's concession encompasses claims 16, 74, 75, 92, 95, 96, 97, 101, 102 and 103 of the '492 patent, each of which is directed to substantially the same "hypertext statement" subject matter claimed in invalidated claims 41 and 61 of the '492 patent. Should collateral estoppel apply, then, Soverain cannot and does not contest the validity of those "rise or fall" claims in this case.

**D.** **Soverain Had A Full And Fair Opportunity To Litigate The Validity Of The "Shopping Cart" And "Hypertext Statement" Subject Matter In _Newegg_.**

Soverain cannot, as a matter of law, meet its stringent burden to establish that it did not have a full and fair opportunity to litigate the validity of the claims invalidated by the Federal Circuit in _Newegg_.  Soverain not only had a full and fair **_opportunity_** to litigate the issue of obviousness, Soverain **_actually_** litigated the issue of obviousness through trial and has since exhausted all possible avenues of appeal.  In fact, during the appeal process, the Federal Circuit granted Soverain's request for a "rehearing, to assure that the claims at issue in this [_Newegg_] litigation were adequately and fairly assessed at trial and on appeal."  _Newegg_ II, 728 F.3d at 1333.  This is the polar opposite of a case where there is doubt over "the quality, extensiveness, or fairness of procedures followed in prior litigation."  _C.f. Montana v. United States_, 440 U.S. 147, 164 n.11, 99 S. Ct. 970 (1979).  The issue of validity in this case (1) is identical to the issue adjudicated in _Newegg_, (2) was actually litigated there, and (3) was necessary to (and indeed was) the resulting judgment there.  _See Levi Strauss_, 719 F.3d at 1371.  And because Soverain cannot meet its burden to establish that it did not have a full and fair opportunity to litigate the issue of validity in _Newegg_, the Court should grant summary judgment in favor of defendants here.  _See Blonder-Tongue_, 402 U.S. at 333.

### 1. Soverain Actually Litigated The Issue Of Validity Through Trial.

First, there can be no dispute that Soverain had, and availed itself of, a full and fair opportunity to litigate the validity of its claims.  Newegg asserted obviousness as a defense to patent infringement and presented evidence that each of the limitations of the asserted claims were found in the prior art.  _See, e.g._, _Newegg_ April 29, 2010 AM Trial Tr. at 56:2-16; 56:10-12; 60:11-61:7; 65:15-25; 67:8-21; 70:3-71:6; 75:10-22 (attached as Ex. 10).

In its rebuttal case, Soverain presented its own expert witness, Dr. Michael Shamos, to rebut Newegg's obviousness defense.

> Q:      Now, what about obviousness?  We've heard that word a number of times in this case.  Has – has Mr. Tittel shown the claims are obvious?
>
> A:      Well, he didn't use the word obvious, but the demonstrations that he made seemed to be veering in the direction.  And to the extent that he put various references together to try to show that the claims were obvious, I don't think he did that properly, for several reasons.

*Newegg* April 29, 2010 PM Trial Tr. at 150:18-151:1 (attached as Ex. 11).  Dr. Shamos then proceeded to explain why, in his opinion, Newegg had failed to establish that the asserted claims were invalid as obvious.  For example:

> Q:      Can we go to the next slide, please?
>
> A:      Well, this is just an explanation of why it wouldn't have been obvious how to move CompuServe to the web. If I just took all the CompuServe software and I replaced the interface, the network interface to an internet interface, the system would completely collapse, and you wouldn't be able to order a single thing on it.

*Id.* at 161:18-25*; see also, e.g., id.* at 169:2-12; 175:9-18; 181:7-25; 183:1-14 (explaining that limitations of the asserted claims were missing from the prior art, even in combination).  Dr. Shamos even offered testimony introducing affirmative evidence of non-obviousness.

> Q:      You tested the additional considerations of non-obviousness?
>
> A:      Yes. So even if a combination of different prior art references seem to have the elements of the claim, even that doesn't mean that the claim is obvious, because it's required to look at actual evidence of whether or not the claim is obvious.  And those -- that evidence is called additional considerations of non-obviousness. And my understanding is that the law requires such additional considerations to be considered if they exist. And they do exist in this case.

*Id.* at 184:17-185:3; *see also, e.g., id.* at 186:9-187:16 (testimony regarding praise by others); 187:17-25 (testimony regarding commercial success); 188:10-189:10 (testimony regarding failure by others).

Page 11

After all of this testimony, Soverain's expert concluded that, in his opinion, Newegg had not established that any of the asserted claims were invalid as obvious.

Q:     I think we've reached your final slide, Professor.

A:     All right.

Q:     The bottom line.

A:     Bottom line, that Mr. Tittel and Newegg and all its witnesses haven't shown that any asserted claim is anticipated, and likewise, they haven't shown that any asserted claim is obvious.

Q:     And those are your opinions in this case?

A:     They are.

*Id.* at 189:11-20.

Having put on an unfettered rebuttal case to Newegg's obviousness defense, Soverain cannot now claim that it had anything less than a full and fair opportunity to litigate that issue.

## 2.     <u>The Issue of Validity Was Fully and Fairly Before the Federal Circuit.</u>

Second, there can be no dispute that the issue of validity was also fully and fairly before the Federal Circuit on appeal.  Both parties addressed Newegg's obviousness defense at length in their briefs.  Newegg's appeal brief argued that it had presented substantial evidence demonstrating facts sufficient to support a finding of obviousness.  *See* Ex. 5 (Newegg Appeal Brief), at 40.  Soverain dedicated six pages of its responsive brief to arguing that, in view of the evidence it presented at trial, no reasonable jury could have found the asserted claims invalid as obvious.  *See* Ex. 6 (Soverain Appeal Br.), at 45-51.  In particular, Soverain cataloged the trial evidence showing, in its view, that:

- the prior art, even in combination, failed to disclose several elements of the asserted "shopping cart" and "hypertext statement" claims,  *see id.* at 45-47,

- the prior art "actually taught away from Newegg's proposed [obviousness] combinations," *see id.* at 48, and that

- Soverain had "introduced substantial evidence of secondary considerations, confirming the non-obviousness of the patented technology," *see id.* at 50.

After carefully considering both parties' arguments and examining the trial record, the Federal Circuit concluded—in a unanimous decision—that all of Soverain's asserted claims were invalid as obvious.  The Federal Circuit noted that its decision was not based on a blank slate, but rather compelled by the trial record following Soverain's full and fair opportunity to litigate the issue of obviousness.   With respect to the asserted "shopping cart" claims, the Federal Circuit stated:

> [T]he trial record contains extensive testimony of the experts for both sides, discussing every claimed element of the patented subject matter and the prior art system. Their testimony was subjected to examination and cross examination, before decision of the question of obviousness was removed from the jury. . . . We conclude that the prior art CompuServe Mall system, by clear and convincing evidence, rendered obvious the "shopping cart claims: claims 34 and 51 of the '314 patent and claim 17 of the '492 patent.  These claims are invalid; the district court's contrary ruling is reversed.

*Newegg I*, 705 F.3d at 1341.  The court likewise concluded that the asserted "hypertext statement" claims were also invalid as obvious.  *Id*. at 1344.  The Federal Circuit's judgment is now final and estops Soverain from contesting the invalidity of its claims directed to the same subject matter.

### 3.    The Federal Circuit And Supreme Court Have Already Rejected Soverain's Efforts To Set Aside The *Newegg* Judgment.

Finally, there can be no dispute that, following a full and fair trial on the issue of obviousness, the Federal Circuit's judgment in *Newegg* was proper and that Soverain has been afforded its day in court on the issue.  Indeed, Soverain has already challenged the propriety of the Federal Circuit's judgment in *Newegg* three times.

Those challenges have been denied at every turn.  Soverain sought review of the Federal Circuit's *Newegg* decision by the original Federal Circuit panel, the *en banc* Federal Circuit, and

Page 13

the Supreme Court, arguing, among other things, that the original panel had improperly departed

from the Supreme Court's *Graham* precedent and resolved disputed issues of fact.  *See* Ex. 7

(Plaintiff-Appellee's Combined Petition for Panel Rehearing and Rehearing *En Banc*), at 2-3, 7;

Ex. 8 (Petition for a Writ of *Certiorari*).  In fact, not only did Soverain argue non-obviousness of

its claims in its responsive brief on appeal, Soverain further re-argued non-obviousness in its

petition for rehearing and in its supplemental briefing that followed.  *See Newegg II,* 728 F.3d at

1335 ("Soverain devotes most of its supplemental briefing to reargument of issues resolved in

the court's prior opinion, especially relating to the terms 'product identifier' and 'shopping cart

database.'")  The original panel granted a rehearing, to assure that the claims at issue in were

adequately and fairly assessed at trial and on appeal, and then extended its determination of

invalidity to "shopping cart" claim 35 of the '314 patent.  *Id.* at 1333.  Thus, the panel extended

its original decision to hold that claim—like all of Soverain's other asserted claims—invalid as

obvious as a matter of law.  *Id.* at 1336.  The panel otherwise denied Soverain's petition for

rehearing concerning invalidity, as did the *en banc* Federal Circuit and the Supreme Court.  This

Court should likewise reject Soverain's fourth attempt to revisit the final judgment of invalidity.

## V.      SUMMARY JUDGMENT OF OBVIOUSNESS ON THE "RISE OR FALL" CLAIMS IS PROPER EVEN WITHOUT COLLATERAL ESTOPPEL

Even if Soverain is not collaterally estopped from rearguing the final judgment of

obviousness in *Newegg*, this Court should nonetheless grant summary judgment that the

shopping cart and hypertext statement claims asserted in this case are obvious for the very same

reasons that the Federal Circuit's *Newegg* decision cited.  Soverain can provide no legitimate

reason why this Court should substitute its own opinion on obviousness for that of a unanimous

panel of the Federal Circuit in *Newegg*.  Soverain has already tried—and failed—to have the

*Newegg* panel, the full Federal Circuit, and the Supreme Court overturn that decision, and there is no basis for this Court to proceed any differently on Soverain's fourth bite at the apple.

### A.      Already Invalid Claims.

Of the shopping cart and hypertext statement claims expressly found invalid in *Newegg*, Soverain asserts three of them here:  '314 claims 34, 35, and 51 (all shopping cart claims). Those claims are obvious here, of course, for the same reasons that the Federal Circuit found them obvious as a matter of law in *Newegg*.  Indeed, the Federal Circuit's decision of obviousness of those claims is binding on this court as a matter of *stare decisis*.  (*See* fn. 4 above).  This Court should therefore find asserted '314 claims 34, 35, and 51 obvious as a matter of law here.

### B.      The Additional "Rise or Fall" Claims.

In addition to the three asserted claims found invalid in *Newegg*, Soverain concedes that another 24 shopping cart and hypertext statement claims are so similar to the claims expressly invalidated in *Newegg* that they "rise or fall" with the collateral estoppel issue.[6]  Even if Soverain were not subject to collateral estoppel, all of the additional 24 claims fall within the Federal Circuit's reasoning that Soverain's technology was not inventive.

First, Soverain's own admission that these 24 additional claims are similar enough to "fall" if collateral estoppel applies, standing alone, supports a finding of their obviousness by this Court.  The standard for collateral estoppel of other claims not at issue in the prior decision is whether they are different enough from the invalid claims to "materially alter the question of invalidity."  *Ohio Willow Wood*, 735 F.3d at 1342.  It is self-evident that if these 24 claims are so alike as to not "materially alter the question of invalidity," as Soverain admits by agreeing that

---

[6] These additional claims that Soverain agrees will rise or fall with the estoppel issue are: '314 patent claims 36-39, 50, 60-61, 65, 110-111, 120-121 and '492 patent claims 16, 18, 36, 74-75, 92, 95-97, and 101-103.  *See also* Ex. 4 (listing claims at issue on this motion).

they rise or fall with collateral estoppel, then they cannot be materially different for obviousness purposes from the ones found invalid in *Newegg*.  If this Court (as it must) follows the Federal Circuit's decision that the five claims expressly reviewed there are obvious, then Soverain's admission on collateral estoppel's effect should end the obviousness analysis for all of these "rise or fall" claims.

Second, there is a good reason why Soverain agrees that these 24 additional claims are not materially different for invalidity purposes.  The Federal Circuit's rejection of Soverain's rebuttal arguments in *Newegg* makes it equally clear that these "rise or fall" claims are part of the same subject matter and suffer the same fatal flaws as the claims that were expressly invalidated. For example, the *Newegg* Court flatly rejected Soverain's arguments that porting old e-commerce concepts to the Internet or World Wide Web was somehow inventive.  *Newegg*, 705 F.3d at 1340 ("Precedent agrees with Newegg that a person of ordinary skill could have adapted the CompuServe order command to known browser capabilities when these capabilities became commonplace, and that it was obvious to do so.").  Likewise, the Court did not find that the specific content or timing of messages (e.g., a product identifier) mattered when the end result (e.g., placing an order for a product) was the same in the pre-Web prior art.  *Id*.  ("Nor was it disputed that, regardless of how the order command was structured, it conveyed the requisite information to the CompuServe server computer.").  And, for the hypertext statement claims, the Court rejected the argument that CompuServe's transaction details and messages lacked specific types of information.  *Id*. at 1343 ("The CompuServe server recorded and transmitted purchase information, and provided a 'confirmation number' from which buyers could 'get all the information about that transaction that you might ever need.'").

These findings apply equally to the 24 additional "rise or fall" claims.  For example, these claims include (a) method versions of system claims invalidated in *Newegg* (*e.g.*, '314 claim 39 and '492 claims 16 and 18), (b) claims that are in fact broader than claims found invalid in *Newegg* (*e.g.*, '492 claim 36), (c) claims that simply port the functionality described to the Internet or similar network (*e.g.*, '314 claims 50, 110, and 111, and '492 claims 74 and 75), (d) claims that specify use of admitted prior art URLs (*e.g.*, '314 claims 60 and 120), (e) claims that specify the order or content of messages for the shopping cart or hypertext statement functionality (*e.g.*, '314 claims 36-38 and 65); and (f) claims that specify the types of information in transaction documents (*e.g.*, '492 claims 92, 95-97, 101-103).  Soverain cannot make a legitimate distinction between these claims and the Federal Circuit's findings that the shopping cart and hypertext statement technology in the '314 and '492 patents was not inventive.

## VI.  SOVERAIN'S ELECTED CLAIMS ARE OBVIOUS AS A MATTER OF LAW

Soverain's Notice of Asserted Claims indicated that claims 49, 74, 84, 109, 134, and 144 of the '314 patent (the "Elected Claims") are asserted regardless of any collateral estoppel effect of *Newegg*.  Dkt. No. 156.  All six of these Elected Claims depend from either claim 34 or claim 39, which are system and method analogues of each other with no material substantive differences, and which are both obvious as a matter of law for the reasons discussed above.  The additional limitations added by these dependent claims, which were not at issue in the *Newegg* litigation, are trivial and well-known functions or features that would have been obvious to a person skilled in the art to include in light of the CompuServe materials.

Independent claims 34 and 39 are obvious for the reasons discussed above.  The obviousness of the additional features of the Elected Claims may be examined without also looking at every claim element of the independent claims as if on a blank slate.  *See Pfaff v. Wells Elecs.*, 525 U.S. 55, 60 (1998) ("Given the court's § 102(b) holding, the prior art included Pfaff's first four

claims.").  While the following analysis considers the subject matter of the Elected Claims "as a whole" pursuant to 35 U.S.C. § 103, it begins from the premise that the elements of the independent claims are all included in the prior art as discussed above, and examines the inventiveness of the addition of the features of the Elected Claims to claims 34 and 39.

"[A] patent for a combination which only unites old elements with no change in their respective functions … obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men.  This is a principal reason for declining to allow patents for what is obvious."  *KSR Int'l Co v. Teleflex Inc.*, 550 U.S. 398, 415-16 (2007).  Courts should take an "expansive and flexible" approach in determining obviousness, taking into account "the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 415-18.  "If a person of ordinary skill in the art can implement a predictable variation [of the prior art], § 103 likely bars its patentability."  *Id.* at 417.  "[A]ny need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed."  *Id.* at 420.

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*Id.* at 421.

As the Federal Circuit recognized, the invention claimed in Soverain's patent is, at best, modest in the grand scheme of the industry.  "Open Market did not invent the Internet, or hypertext, or the URL."  *Newegg I*, 705 F.3d at 1344.  Many of the dependent claims at issue in *Newegg* were particularly trivial applications of well-known fixtures of Internet communications and database management.  For example, according to the Federal Circuit, merely using hypertext

to deliver mundane information to a user such as a statement document or transaction detail document "was a routine incorporation of Internet technology into existing processes." *Id.* (citing *Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1370-71 (Fed. Cir. 2010) and *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327 (Fed. Cir. 2008)).  Similarly, in examining the "product identifier" claim requirement (which is no more than including information that identifies a product in the shopping cart message), the Federal Circuit held: "Precedent agrees with Newegg that a person of ordinary skill could have adapted the CompuServe order command to known browser capabilities when these capabilities became commonplace, and that it was obvious to do so." *Newegg I*, 705 F.3d at 1340.

While Defendants believe the Elected Claims are invalid as a matter of law under the *Newegg* decision and common sense, Defendants also offer as additional support the Declaration of Alexander B. Trevor.  Exhibit 13 (hereinafter, "Trevor Decl.").  Mr. Trevor was the Chief Technology Officer of CompuServe, Inc. during the relevant time period, and has 40 years of experience in the online and Internet services industry, including considerable hands-on experience with software engineering at CompuServe from 1980 through 1996.  Trevor Decl. at ¶¶ 6-9, 40-57 (describing Mr. Trevor's involvement in and knowledge of the design and development of various CompuServe functions, including the CompuServe Electronic Mall at issue in *Newegg*).

For the reasons set forth below, and those recited in Mr. Trevor's declaration, these Elected Claims are obvious as a matter of law, and that summary judgment of invalidity should be entered.

A.    **Claims 49 and 109: The Payment Message Activation Claims.**

Claims 49 and 109 provide the additional claim requirement of having the shopping cart computer activate a payment message after receiving a message from the buyer computer:

49.     A network-based sales system in accordance with claim 34, wherein the buyer computer activates the payment message by transmitting a message to the shopping cart computer that causes the payment message to be activated.

109.    The method of claim 39, wherein the buyer computer activates the payment message by transmitting a message to the shopping cart computer that causes the payment message to be activated.

In the *Newegg* case, the Court entered an agreed construction for "payment message" of "a message relating to a payment for one or more products." *Soverain Software, LLC v. Newegg Inc.*, No. 6:07-cv-511, Dkt. 214, at 3 (May 28, 2009).  The Court also entered a construction of "to cause [the] payment message to be activated to initiate a payment transaction" in claim 34 to mean "to cause an action associated with [the] payment message to initiate a payment transaction." *Id.*  Under these constructions, "caus[ing] the payment message to be activated" in claims 49 and 109 would mean "caus[ing] an action associated with [the] payment message."

By invalidating claim 34 in *Newegg*, the Federal Circuit already identified in the prior art all of the following:  (i) the creation of a payment message; (ii) the activation of a payment message; and (iii) the initiation of the payment transaction.  Any additional limitations in these claims are clearly inherent in the shopping cart system.  Computers communicate with one another using messages.  Therefore, the mere facts (1) that a payment message is activated by a buyer computer and (2) that the shopping cart computer is a separate computer means that a message causing that activation is transmitted from the buyer computer (where the choice was made) to the shopping cart computer (where the payment message was created).  Further, the idea of the shopping cart computer, having already "cause[d] a payment message associated with said shopping cart to be created" in claims 34 and 39, merely "causing an action associated with

the payment message" upon receiving "a message" is truly trivial.[7]  One example of a payment message described in the '314 Patent is a URL that the user can click to begin paying for products.  *See* '314 Patent, at 8:25-31 (describing payment message URL activation).  To simply request that a server cause an action associated with such a URL that is already created by the server is a routine feature of the fundamental HTTP client-server framework.

Once a shopper on the CompuServe Mall identified a product, that user could enter the "O" command to place it in the user's shopping cart (or click on the appropriate button in the Windows CIM version).  Bowen, CompuServe Manual (Newegg Trial Exhibit 2, attached as Exhibit 14), at 321; Ellsworth, CompuServe Manual (Newegg Trial Exhibit 4, attached as Exhibit 15), at 376; *Soverain*, 705 F.3d at 1339 ("If the buyer wanted to purchase the product, the buyer would type the order command 'O' and CompuServe would store the product in the buyer's personal holding file on the server.").  This was highlighted by the Federal Circuit as a trivial step.  *Soverain*, 728 F.3d at 1335 (citing trial testimony that the "payment message" could be activated by the user); *also* Ellsworth (Ex. 15), at 376 ("After you indicate that the order is correct and complete…").

The CompuServe Mall video presented in the Newegg trial showed product selection and a shopping cart, including the quantity and price.  Testimony of Alexander Trevor, *Newegg* April 28, 2010 PM Trial Tr. at 51-62 (attached as Ex. 12) (discussing the CompuServe Mall video, including the "order" function presented).  Below is a screenshot of the CompuServe Mall with an item being added to the shopping cart.

---

[7] Indeed, under the District Court's prior construction and the Federal Circuit's reasoning, an action "associated with the payment message to initiate a payment transaction" already exists in the prior art.  *See* Claim 34.

Page 21



Trevor Decl. at ¶¶ 57, 68; CompuServe Mall Video, Newegg Trial Ex. 156, at 1:25, submitted

via Compact Disc as Exhibit 16; Trevor Testimony (Ex. 12), at 59:14-19 ("[H]ere they're going

to actually press the order button . . .).  Once an item is added, the screen looked like this:



Trevor Decl. at ¶ 68; CompuServe Mall Video (Ex. 16), at 1:30; Trevor Testimony (Ex. 12), at

59:16-60:21 (explaining that pressing the order button "brings up the order form" shown above,

and describing various options to continue shopping, change order, delete items, or cancel an

order).  As seen in the screen shots, once an item is ordered, the responsive message and screen

include information about price.  Trevor Decl. at ¶ 69.  This is an action that was necessarily

caused by a message from the buyer computer to the shopping cart computer transmitting

information to convey that the Order button was clicked.  Under the *Newegg* construction, these messages relate to or are associated with the payment message and satisfy claims 49 and 109.  *Id.* ("Under the *Newegg* construction I discussed above, these messages 'caus[e] an action associated with [the] payment message,' specifically giving the user the ability to see and approve (by clicking 'ok') of a price that will later be reflected in the payment message.   This functionality satisfies claims 49 and 109.").

> As Mr. Trevor further explains,

> "[e]ven if the functionality of claims 49 and 109 were not expressly included in the CompuServe Electronic Mall, the broad idea of simply causing 'an action associated with [the] payment message' to be taken upon receipt of 'a message' is trivial.  In an HTTP-based client-server arrangement, taking actions in response to messages where those actions relate to other messages, is arguably the core functionality of any interactive and progressive online experience, particularly for online shopping experience that goes through a progression that ultimately culminates in a payment (and a 'payment message').  It would be obvious to take actions related to the payment message (e.g., updating the payment message or showing the user information such as price that is associated with the payment message).

Trevor Decl. at ¶ 70.

> **B.**      **Claims 74 and 134: The Payment Confirmation Claims.**

Claims 74 and 134 include the limitations of claims 49 and 109, and add additional limitations providing that a payment confirmation document is sent to the buyer computer:

> 74.      A network-based sales system in accordance with claim 34, wherein the buyer computer activates the payment message by transmitting a message to the shopping cart computer that causes the payment message to be activated;

> wherein the shopping cart computer transmits a payment confirmation document to the buyer computer.

> 134.     The method of claim 39, wherein the buyer computer activates the payment message by transmitting a message to the shopping cart computer that causes the payment message to be activated;

> wherein the shopping cart computer transmits a payment confirmation document to the buyer computer.

The first clause of claims 74 and 134 are rendered obvious for the reasons discussed in the preceding section.  The added payment confirmation feature is even more trivial and obvious as a matter of common sense.  Once a payment message has already been created and activated, the idea of transmitting a payment confirmation document to the customer's computer is entirely devoid of invention.  Indeed, a system in which a user clicks a payment or order button and nothing happens would be ineffective, because the user would have no idea whether anything happened as a result of clicking the button.  Further, the very purpose of servers is to provide such information requested by clients, and in this instance the payment confirmation document can be merely a screen confirming whether the customer seeks to now pay for the products in his or her shopping cart, and providing the URL payment message as a link to proceed to make such payment.  *See* '314 Patent, Fig. 6 (showing payment confirmation document); *id.* at 6:5-14; *see also* Trevor Decl. at ¶ 71.

Although the term "payment confirmation document" has not been previously construed, based on its context in the claims and in the patent, one skilled in the art would understand it to be a document that "seeks confirmation of payment details already known or that requests that the user provide payment information," but before submitting payment.  Trevor Decl. at ¶¶ 32-35.

As explained in *Bowen*, once items have been ordered by pressing the "O" command (i.e., after the plurality of shopping cart messages has been received), "you are taken to an order area (the electronic version of the check-out clerk with a cash register) where you are asked for information such as . . . your method of payment."  Bowen, CompuServe Manual (Ex. 14), at 321.  Likewise, as explained in *Ellsworth*, after an item is ordered by pressing the "O" command, the customer may type "checkout" causing an "electronic order form" to appear by which the

customer must specify the "payment method."  Ellsworth, CompuServe Manual (Ex. 15), at 376.

This functionality of the CompuServe Mall plainly satisfies the limitation of "transmit[ting] a

payment confirmation document to the buyer computer" because the document presented to the

user requires that the user confirm that the order is "correct and complete."  *Id.*; *see also* Trevor

Decl. at ¶ 72 (describing how *Ellsworth* and *Bowen* disclosures map to the '314 patent claims).

   At trial Newegg showed the jury the following screen shot of the payment confirmation

page in the Electronic Mall, which clearly includes information about payment and allows the

user to proceed to pay and complete the transaction.



Trevor Decl. at ¶ 73; CompuServe Mall Video (Ex. 16), at 1:58; *see also* Ex. 12 (Trevor

Testimony), at 61:9-19 ("So if you're ready to check out, you press that [checkout button], and

now you would be prompted for billing information.  . . .  These are collecting billing

information.").

   Mr. Trevor further explains that even if it was not present in the CompuServe Electronic

Mall, the feature encompassed by claims 74 and 134 "reflects basic common sense for online

shopping systems":

The purpose of servers in online shopping environments is to provide an ability to purchase products.  Here, once the payment message has been created (under claims 34 and 39) and activated (under claims 49 and 109) via the user's adding items to their shopping carts on the Electronic Mall, providing the user with a payment confirmation document is obvious and trivial.  The payment confirmation document can be merely a screen confirming whether the customer seeks to now pay for the products in his or her shopping cart, and providing a URL payment message as a link to proceed to make such payment.  *See* '314 Patent, Fig. 6 (showing payment confirmation document); *id.* at 6:5-14.  This reflects basic HTML and HTTP functionality as the most straightforward and obvious way to present the user with a screen to confirm the order and begin facilitating payment.

Trevor Decl. at ¶ 71.

Alternatively, even if Soverain's infringement contentions are correct in asserting that an electronic receipt or transaction confirmation document satisfy the "payment confirmation document" claim element, the Mall included this functionality.  *See* Trevor Decl. at ¶¶ 37-39.  Indeed, the Federal Circuit has already held that such a "statement document" was present in and obvious as a matter of law in view of the CompuServe Mall.   *Soverain*, 705 F.3d at 1344 ("[T]he record . . . supports Newegg's argument that these aspects were performed in the CompuServe Mall system. . . .  [T]he use of hypertext to communicate a 'statement document' or 'transaction detail document' was a routine incorporation of Internet technology into existing processes.").

### C.      Claims 84 and 144: The Name and Password Request Claims.

Claims 84 and 144 recite a feature that the shopping cart computer will ask the customer to login to the system in response to the customer having added items to the user's shopping cart:

84.      A network-based sales system in accordance with claim 34, wherein the shopping cart computer, in response to the plurality of shopping cart messages, causes an account name and password request message to be transmitted to the buyer computer.

144.      The method of claim 39, wherein the shopping cart computer, in response to the plurality of shopping cart messages, causes an account name and password request message to be transmitted to the buyer computer.

The concept of asking a user to login to the system once the user has begun shopping involves no significant technical innovation, but is a trivial step that was well known to those skilled in the art.  User authentication (particularly by userid/password) was ubiquitous in computer security for decades prior to the filing of the Soverain's patent application, and it was even known to be in the HTTP specification as confirmed by named inventor Winfield Treese at trial.  Testimony of Winfield Treese, *Newegg* April 28, 2010 PM Trial Tr. at 19:22 – 22:5 (attached as Ex. 12), (confirming that HTTP basic authentication was known in May 1994).

As Mr. Trevor explains, the practice of online shopping predates the '314 Patent by nearly a decade.  Trevor Decl. at ¶ 25.  Typically, and as a matter of common sense, online shopping systems have been modeled after their brick-and-mortar analogues.  *Id.* at ¶ 26.  Many brick-and-mortar stores allow customers to shop before any payment with customer authentication (*e.g.*, providing ID to use a credit card) is required, while other stores require proof of membership or age before shopping can begin.  *Id.* at ¶¶ 26-28 (noting how Costco and Sam's Club require membership authentication before shopping, while other stores will not ask for authentication until checkout); *id.* at ¶¶ 77-79 (discussing websites permitting anonymous browsing of products).

In the 1980's, CompuServe required authentication upfront as its customers generally connected to the CompuServe Mall via CompuServe's dedicated packet network, which created a "virtual circuit" between the user's computer and CompuServe.  *Id.* at ¶¶ 45, 52.  The virtual circuit was a continuous connection, such that "[o]nce a user's identity was established in the login procedure over a virtual circuit, every message sent over that particular virtual circuit was positively associated with the user."  *Id.* at ¶ 45.   "Thus, it was unnecessary to include the user ID in subsequent messages since the user identity could be extracted from the virtual circuit

identity." *Id.*  The continuous connection permitted the CompuServe host to engage in a "stateful" communication, such that each message transmission was part of an ordered conversation.  If the connection was lost, then the user would have to login and begin again.  *Id.*

By contrast, HTTP was designed to be a simple Request/Response protocol, in which each message pair was presumed to be independent of every other message pair.  Thus, HTTP was a "stateless" protocol, in that no correlation between any two consecutive Request messages was inferred.  Various mechanisms for creating "stateful" transactions were proposed by web developers, including the addition of "hidden" fields in the HTML "FORM" specification, allowing for the creation of electronic commerce applications.  *Id.* at ¶ 46.

Operating over the Internet rather than a privately owned network, website operators did not need to charge for "connection time".  Thus, websites had greater flexibility in implementing a user authentication policy.  *Id.* at ¶¶ 44-46, 75-79.  Mr. Treese testified that HTTP incorporated a userid/password method of user authentication.  Treese Testimony (Ex. 12), at 19:22–22:5); Trevor Decl. at ¶ 75.  HTTP "allowed websites to obtain a user ID/password from a user before allowing access to specified web pages."  Trevor Decl. at ¶ 75 (explaining that "[a] compliant browser would solicit the user ID/password from the user, and submit the request with the 'Authorization' header as part of the HTTP request message that would be sent to the web server").  Another method of user authentication via HTTP/HTML was also taught by prior art U.S. Patent No. 5,724,424 to Gifford ("Gifford") (Ex. 9).  Trevor Decl. at ¶ 80-83.

Requiring a customer to provide identification before any shopping takes place could discourage shopping on an electronic site, just as it likely would in most "brick-and-mortar" stores or malls.  Web standards allowed for "anonymous browsing" of portions of a website, making HTTP particularly suitable for modeling an electronic store, in which the user could

"window shop" prior to purchasing items.  *Id*. at ¶¶ 77-79 (explaining that the connectionless

nature of HTTP transactions allowed for anonymous browsing).  Moreover, asking for login

credentials after shopping is complete and a user checks out provides common sense security

advantages.  *Id.* (explaining that requiring authentication close to the point of sale "would

provide the advantage of anonymous browsing to the user, while reducing the potential for

fraudulent purchases" particularly when a user's payment information was previously stored).

Specifically, by making customers authenticate themselves closer to the point of sale, the

potential for an earlier logged-in customer to step away from a computer and have another

individual step in to complete a sale is minimized.  *Id.*  Thus, not only is a later login helpful to

prevent fraud, it also ensures that any purchases made are in fact associated with the correct

account holder.  *Id.*  Anyone skilled in the art looking to move the pre-Internet CompuServe Mall

onto the Internet would have been aware of these technical options and advantages of having the

login occur after the products were selected, as in claims 84 and 144.  *Id.* at ¶¶ 74-79. These

claims therefore reflect obvious and predictable applications of well-known business practices

and HTTP functions.  Indeed, even Dr. Lawrence Stewart, one of the inventors of the '314

Patent, testified in the Newegg trial that he was "irritated" by commercial websites that "stopped

[him] at the main entrance because [he] had to have an account to even get inside."  (Testimony

of Lawrence Stewart, *Newegg* April 28, 2010 PM Trial Tr., at 115:16-25 (attached as Ex. 12).

Common sense dictates that merchants should avoid irritating customers if there are ways to do

so, such as delaying authentication until closer to the point of sale.  The emergence of HTTP

made this shift in authentication timing possible and an obvious design choice.

  Moreover, the Gifford Patent (Ex. 9), relied on by the Federal Circuit in *Newegg*, teaches

an e-commerce environment using Web protocols.  Trevor Decl. at ¶¶ 80, 82.  Gifford logically

lends itself to the attention of a person designing an online shopping system like the Electronic

Mall, and renders the use of the commonplace Web functions disclosed therein obvious.  *Id.* at ¶¶

81, 83.   Gifford specifically teaches that a user can be prompted for missing payment

information during checkout that includes a request for a user ID ("account number" 13) and

password ("authenticator" 14).  Gifford, Fig. 4 and Col. 5, ll. 29-44 ("Fig. 4 is a missing payment

information document that is used to gather user account information for the requested purchase .

. . [where] dialog box 13 is used to enter an account number [and] dialog box 14 is used to enter

an optional authenticator."); Trevor Decl. at ¶¶ 82-83.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant this

motion for summary judgment that all of Soverain's asserted claims are invalid.

Dated this 28th day of April, 2014.

Respectfully submitted,

<u>/s/ J. Christopher Carraway</u>
Eric H. Findlay, State Bar No. 00789886
Brian Craft, State Bar No 04972020
FINDLAY CRAFT, LLP
6760 Old Jacksonville Hwy., Ste. 101
Tyler, Texas  75703
efindlay@findlaycraft.com
bcraft@findlaycraft.com
Tel:  (903)534-1100
Fax:  (903)534-1137

Jared Bobrow, Lead Attorney
Arjun Mehra
WEIL, GOTSHAL & MANGES, LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Tel:  (650) 802-3000
Fax:  (650) 802-3100
jared.bobrow@weil.com
arjun.mehra@weil.com

Melissa Hotze, State Bar No. 24049831
WEIL, GOTSHAL & MANGES, LLP
700 Louisiana, Suite 1600
Houston, TX 77002-2755
Tel:  (713) 546-5033
Fax:  (713) 224-9511
melissa.hotze@weil.com

J. Christopher Carraway
James E. Geringer
Richard D. McLeod, State Bar No. 24026836
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Tel: (503) 595-5300
Fax: (503) 595-5301
christopher.carraway@klarquist.com
james.geringer@klarquist.com
rick.mcleod@klarquist.com

*Attorneys for Defendants eBay Inc., GSI Commerce, Inc.,*
*PayPal Inc. and RadioShack Corp.*

*/s/ Daniel H. Brean (with permission)*
Kent E. Baldauf, Jr., Lead Attorney
Bryan P. Clark
Daniel H. Brean
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Boulevard, Suite 1200
Pittsburgh, PA 15222
Tel: (412) 471-8815
Fax:  (412) 471-4094
dbrean@webblaw.com
kbaldaufjr@webblaw.com

Trey Yarbrough
Debra E. Gunter
YARBROUGH WILCOX GUNTER
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191

*Attorneys for Defendants Macy's, Inc., Macys.Com, Inc.*
*and Bloomingdale's, Inc.*

*/s/ Stephen C. Stout  (with permission)*
David B. Weaver (Lead Attorney), State Bar No. 00798576
Stephen C. Stout, State Bar No. 24060672
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: (512) 542-8400
Fax: (512) 542-8612
dweaver@velaw.com
sstout@velaw.com

Hilary L. Preston, State Bar No. 24062946
VINSON & ELKINS LLP
666 Fifth Avenue, 26th Floor
New York, New York 10103-0040
Tel: (212) 237-0000
Fax: (212) 237-0100
hpreston@velaw.com

***Attorneys for Defendants Euromarket Designs, Inc. and Meadowbrook L.L.C., Nordstrom, Inc., Williams-Sonoma, Inc., Saks Incorporated and Saks Direct, LLC, Office Depot, Inc., Walgreen Co., Beauty.com, Inc., Drugstore.com, Inc., and Vision Direct, Inc.***

*/s/   Eric J. Lobenfeld  (with permission)*
Eric J. Lobenfeld
Ira J. Schaefer
Lyndon M. Tretter
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Tel.:  (212) 918-3000
Fax:   (212) 918-3100
eric.lobenfeld@hoganlovells.com
ira.schaefer@hoganlovells.com
lyndon.tretter@hoganlovells.com

John M. Pickett
LAW OFFICES OF JOHN PICKETT
4122 Texas Boulevard
Texarkana, TX 75504
Tel.: (903) 794-1303
Fax: (903) 792-5098
jpickett@jpickettlaw.com

*Attorneys for Defendants J. Crew Group, Inc. and
Madewell, Inc., Kohl's Corporation and Kohl's
Department Stores, Inc.*

/s/ Richard M. Cowell (*with permission*)
Eric M. Albritton, State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Tel: (903) 757-8449
Fax: (903) 758-7397
ema@emafirm.com

John M. Desmarais
Jon T. Hohenthaner
Richard M. Cowell
DESMARAIS LLP
230 Park Ave.
New York, New York 10169
Tel: (201) 351-3400
Fax: (201) 351-3401
jdesmarais@desmaraisllp.com
jhohenthaner@desmaraisllp.com
rcowell@desmaraisllp.com

*Counsel for International Business Machines Corp.,
Fossil, Inc. and Home Depot U.S.A., Inc.*

/s/ Nicholas G. Papastavros (*with permission*)
Claudia Wilson Frost
State Bar No. 21671300
DLA PIPER LLP
1000 Louisiana, Suite 2800
Houston, Texas 77002
Tel:  713.425.8450
Fax:  713.300.6050
claudia.frost@dlapiper.com

Nicholas G. Papastavros
DLA PIPER LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Tel:  617.406.6000
nick.papastavros@dlapiper.com

Steven J. Reynolds
DLA PIPER LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Tel:  312.368.3467
steven.reynolds@dlapiper.com

***Counsel for Defendants Staples, Inc. and Quill
Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and exhibits via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 28, 2014.  One exhibit, a compact disk containing a video file, is being filed by hand, and a copy of the disk is being served on counsel for Plaintiff via overnight delivery.

/s/ J. Christopher Carraway